**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICTOF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **FRANKIE N. MORGAN, et. al.,** | § | |
| | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| **v.** | § | **CA No: 3:16-CV-544-K-BF** |
| | § | |
| **HARMONY PUBLIC SCHOOLS d/b/a** | § | |
| **HARMONY SCHOOL OF NATURE** | § | |
| **AND ATHLETICS, et. al.** | § | |
| | § | |
| Defendants. | § | |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Plaintiffs FRANKIE N. MORGAN and ANGELA MORGAN-LYLES and complains of Defendants HARMONY PUBLIC SCHOOLS, d/b/A HARMONY SCHOOL OF NATURE AND ATHLETICS, Mehmet Basoglu, Bilal Ozen, Nihat Nbayhan, Svede Aslane, Sibel Cancurt, Staci Reimer, Heather Prekup, Alexandra Goldblatt McCarron, Robert Lichtscheidl, Roberto Barajas Thomas, G. William Franz, Jennifer Robertson, Hatoon Dablouk, Ersin Koncur, Winston John, Gloria Meyers, Dawn Wakeley, Keith Goldberg, and Eric Ransleben, and in support thereof would show the following:

**I.      PARTIES**

1.      This Court ordered claims and parties to 3-16-CV098-K-BF, 3:16-CV-02455-K-BF, 3:16-CV-02463-K-BF, consolidated under this cause 3:16-CV-00544-K-BF.

2.      Plaintiffs Frankie Morgan and his mother, Angela Morgan-Lyles, are natural persons who reside in Dallas County at 6931 Clarkridge Drive, Dallas, Texas 75236. Notices and other communications should be to their undersigned counsel.

3.      The Harmony, HARMONY PUBLIC SCHOOLS is a Texas nonprofit corporation with corporate headquarters at 9321 W. Sam Houston Parkway S #2, Houston, Texas 77099-5204, and doing business in Dallas County as HARMONY SCHOOL OF NATURE AND ATHLETICS and HARMONY SCHOOL OF NATURE INDEPENDENT SCHOOL at 8120 Camp Wisdom Road, Dallas, Texas, 75429. The Harmony has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384.

4.      Mehmet Basoglu has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

5.       Bilal Ozen, Harmony School of Nature and Athletics and Harmony School of Nature Independent School, 8120 W. Camp Wisdom Rd., Dallas, TX 75249, in the defendant's individual capacity.

6.      Nihat Nbayhan has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher

H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

7.     Staci Reimer has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

8.     Heather Prekup has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

9.     Sevde Aslane has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

10.    Sibel Cancurt has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San

Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

11.     Alexandra Goldblatt McCarron has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

12.     Robert Lichtscheidl has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

13.     Roberto Barajas Thomas has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

14.     G. William Franz has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad

Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

15.     Jennifer Robertson, 1806 Bayfront Dr., Grand Prairie, TX 75051, in the defendant's individual capacity.

16.     Hatoon Dablouk has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

17.     Ersin Koncur has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

18.     Winston John has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz, and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

19.     Gloria Meyers has appeared through counsel and, pending hiring of local counsel, notices and other communications should be sent to Robert A. Schulman, Christopher H. Schulz,

and Lucie S. Tredennick, Schulman Lopez Hoffer & Adelstein LLP, 517 Soledad Street, San Antonio, TX 78205-1508, 700 Lavaca, Suite 1400, Austin, TX 78201, and 701 North Post Oak, Suite 612, Houston, TX 77024, Fax: 210-538-5384, in the defendant's individual capacity.

20.     Dawn Wakeley, Harmony School of Nature and Athletics and Harmony School of Nature Independent School, 8120 W. Camp Wisdom Rd., Dallas, TX 75249, in the defendant's individual capacity.

21.     Keith Goldberg, Harmony School of Nature and Athletics and Harmony School of Nature Independent School, 8120 W. Camp Wisdom Rd., Dallas, TX 75249, in the defendant's individual capacity.

22.     Eric Ransleben, The Law Offices of Eric G. Ransleben, 100 Indian Creek Blvd., Ste. 230, Trophy Club, TX 76262, in the defendant's individual capacity.

## JURISDICTION

23.     This Court has subject matter jurisdiction because Plaintiffs' claims arise under federal law. Harmony receives federal monies for education and has violated Plaintiffs' 504 Rehabilitation Act and ADA rights, bringing it explicitly under the jurisdiction of those laws.

24.     There is subject matter jurisdiction over the individual plaintiffs on the basis of Section 1983 and pendant jurisdiction. Any state claims are closely related and rise out of the same transactions and occurrences, such that this Court has pendant jurisdiction.

25.     This Court has personal jurisdiction of the parties because the parties are residents of Texas and a domestic corporation of Texas and because the transactions and occurrences complained of occurred in Texas.

## II.     VENUE

26.     Venue is appropriate in Dallas County because the parties reside and do business in Dallas County and the transactions and occurrences complained of occurred in Dallas County.

### III.     FACTUAL BACKGROUND

27.     Recently breaking investigative journalism suggests that Texas SEA, TEA, and schools are systematically discriminating against children with learning disabilities like ADD/ADHD. This could be because of a populist prejudice that teachers are better equipped than are trained professionals to practice in the field of medicine, and are thusly self-empowered to determined that students like Frankie do not deserve accommodations. Or, it could be because Texas schools and educational agencies are refusing to expend resources to provide the accommodations required by federal law. Regardless of the ultimate implications, this case is before this Court on the simple premise that Defendants violated Frankie's rights by denying him reasonable accommodations and violated his rights when they denied accommodations because of their prejudices against Frankie's particular disability, ADD/ADHD. The evidence will show that Defendants failed to provide reasonable accommodations to Frankie, and, furthermore, did so as an act of intentional discrimination against individuals with ADD/ADHD. This litigation comes before this Court after multiple attempts by Plaintiffs to obtain a remedy through formal and informal proceedings, including a multitude of 504 plan meetings, two OCR investigation that determined Defendants had failed to accommodate Frankie, and multiple due process hearings before a private attorney hired by Harmony that ended with empty promises of remediation or outright dismissal on inscrutable grounds.

28.     From 2012 through 2016, Plaintiffs have been engaged in a constant effort to obtain and enforce accommodations for Frankie and obtain remedies from Harmony, an entity that receives federal funding and acts under the color of the laws of Texas.

29.     The fact that Harmony had utterly failed to implement Frankie's 504 plan became clear in 2015, when Frankie's standardized test performance illustrated the gap between his purported academic achievement and his education.

30.     Rather than implement the 504 plan, Harmony had simply allowed Frankie to re-do work and tests using references, disguising the fact that he was not learning and was falling behind. Harmony made empty promises for three years, deceived Frankie's mother, and delayed Plaintiffs' remedies, ultimately having their due process claims dismissed by a private attorney hired by Harmony to act as the hearing officer. Now, Frankie is saddled with years of remedial tutoring as he attempts to succeed at college, because he was precluded from receiving the benefits of education by the defendants' acts and omissions.

31.     Frankie is diagnosed with ADD/ADHD, which affects major life activities such as learning, reading, concentrating, thinking, communicating, and working, and is therefore a disability as defined by the ADA and Rehabilitation Act. Because of his condition, he was falling behind in his studies. Harmony determined that Frankie was not eligible for IDEA but that he was eligible for accommodations and was otherwise qualified to continue in his educational programs at Harmony. Frankie was thus placed in a Section 504 plan to accommodate his disability. The predominant aspects of his plan were that he would receive twenty-five percent (25%) more time to complete tests or work or that he would receive a twenty-five percent (25%) reduction in work or test material. The plan presumed that Frankie's instructors would choose the most appropriate accommodation.

32.     Frankie's instructors and other school officials failed to accommodate Frankie's disability, despite the fact that they were informed multiple times of his disability and the accommodations required by his 504 plan, resulting in a denial of the benefits of education.

Furthermore, they did so because of their attitude towards his disability and under color of law because of their authority as teachers and the school's overall policy of denying accommodations to students like Frankie. His instructors regularly criticized him in class because of his disability and the consequences of their refusals to accommodate him and discussed his disability negatively in class, further denying him access to the benefits of education by creating a hostile environment. For example, and without limitation:

    a.  In September 2014, Winston John, his math or engineering instructor, insisted that Frankie just needed to be pushed, and refused to provide either accommodation.

    b.  In December 2014, Jennifer Robinson claimed that she did not understand how to make a reading assignment shorter, and on that basis refused to accommodate Frankie by either deleting a portion of questions about the assignment or by allowing him extra time. She made no accommodation for Frankie.

    c.  Mr. Konkur did not reduce Frankie's assignments by twenty-five percent (25%).

    d.  Mr. Lichtsheidl did not allow Frankie either accommodation. Furthermore, he persecuted Frankie because of his disability, calling him "immoral" and harping on him for the fact that his disability prevented him from working quickly.

    e.  Mrs. Prekup did not meet with Frankie as required to help him develop organizational skills and refused to forward complaints.

    f.  Mr. Franz did not allow Frankie either accommodation.

    g.  Instead of complying with the 504 plan, Mr. Barjas made Frankie do extra assignments. Mr. Barjas regularly mistreated Frankie in class because of his disability, criticizing his shortcomings in front of the class and retaliating against Frankie when his 504 meetings and mentorship required that he be late for class.

    h.   Alexandra Goldblatt McCarron refused to make either accommodation for Frankie.

    i.   Gloria Myers refused to make either accommodation for Frankie.

    j.   Dawn Wakeley refused to make either accommodation for Frankie.

    k.   Keith Goldberg refused to make either accommodation for Frankie.

33.    Harmony and its employees and Frankie's teachers retaliated against him for pursuing federally protected remedies, further interfering with his right to the benefits of education. This occurred after they were made aware of Frankie's complaints and right to an accommodation concerning his education. For example, and without limitation:

    a.   In May, 2013, Gloria Myers announced in class that Frankie was a Special Education student and had an IEP, and that he would not be able to get into college with his grades. She then compared him to her special needs child. Gloria Myers regularly discriminated against Frankie by criticizing his shortcomings in class.

    b.   In January 2015 and thereafter, Hatoon Dablouk was refusing to accommodate Frankie with either solution. This was after 504 meetings in which Frankie and his mother complained about the school's need to comply with the 504 plan and the January filing of an OCR complaint, and was in retaliation against Frankie and his mother for asserting his rights. This occurred on January 26 (Pyramid Printout), January 29 (Cycling of Materials), February 2 (general assignment and Food Chains & Web), February 17 (Concept Review), February 18 & 26 (BIOME and general assignments), and March 3 (Grassland, Desert, and Tundra Biomes).

Previously, Ms. Dablouk had accommodated Frankie, but he retaliated against Frankie by denying him accommodations after complaints by Plaintiffs.

c.  Mr. Barjas retaliated against Frankie and violated his privacy by openly talking about his status as a disabled student in front of the other students. Multiple teachers engaged in this behavior.

d.  Robert Lichtscheidl retaliated against Plaintiff after parental meetings and told Plaintiff that he had no morals or values.

e.  Mrs. Ford constantly treated Frankie as if he were stupid, by speaking extremely slowly and repeating himself multiple times. Mrs. Ford's actions were intended to retaliate against and humiliate Frankie.

34.  Harmony retaliated against Frankie for seeking remedies. For example, during one 504 meeting, Harmony refused to produce a variety of records and asked Frankie's mother to accept a small sum to withdraw Frankie from the school and never enroll any of his siblings at Harmony's schools. Harmony instructed teachers not to comply with the 504 plan in an effort to force Frankie out of Harmony for exercising his federally protected right to an accommodation and due process.

35.  From 2013 on, Harmony developed a pattern of resisting 504 accommodations, hiding facts from the Plaintiffs, and deceiving Plaintiffs to prevent them from seeking remedies and deny him due process. Specifically, but without limitation:

a.  Mrs. Cancurt, Harmony's district coordinator, stated during a meeting that Harmony's teachers were not able to follow a 504 plan and that Harmony couldn't make them follow a 504 plan. She informed Frankie's mother that she could try her luck with the OCR and TEA, as Harmony had dealt with complaints

before. Mrs. Cancurt would not agree to assign Frankie to appropriate teachers and refused to forward complaints.

b.  Mrs. Cox was the 504 coordinator at Frankie's school. She was unable to find records that the school maintained on Frankie. Plaintiffs participated in multiple meetings with Mrs. Cox to get accommodations for Frankie but ultimately Harmony did not give accommodations to Frankie. During the Due Process meeting Mrs. Cox denied our 504 meetings and discussions, of which plaintiff have recordings. Mrs. Cox also altered Harmony's records.

c.  Ms. Aslane was Harmony's District 504 Coordinator and participated in many of our meetings. Ms. Aslane falsely claimed that Harmony did not hire Dr. Davenport.  She withheld records from the plaintiffs and refused to forward complaints.

d.  Dr. Davenport tampered with and destroyed evidence on or about April 4, 2013.

e.  Harmony withheld minutes and other records in May, 2013.

f.  Harmony hindered production of information under the Freedom of Information Act.

g.  In 2013, Mr. Mehmet Basoglu (the Principal) misled Plaintiffs by requesting that they communicate in a manner that the school consider erroneous as to notice of complaints and then dismissing complaints without giving Plaintiffs notice. Basoglu intentionally interfered under color of law with Frankie's right to receive accommodations and due process, and did so as an act of intentional discrimination against students with ADD/ADHD. Basoglu knew that Frankie

was not receiving accommodations and did nothing to assure that teachers provided those accommodations or were trained to do so.

h.  Bilal Ozen, a Principal for Harmony, ignored complaints and, knowing that Frankie was not receiving accommodations, did nothing to assure that teachers provided those accommodations or were trained to do so, and interfered with due process by giving erroneous complaint procedures.

i.  Nihat Nbayhan, Superintendent for Harmony, ignored complaints and, knowing that Frankie was not receiving accommodations, did nothing to assure that teachers provided those accommodations or were trained to do so, and interfered with due process by giving erroneous complaint procedures and ending meetings prior to presentation of facts.

j.  Staci Reimer, School Special Program Advisor employed by Harmony, ignored complaints and, knowing that Frankie was not receiving accommodations, did nothing to assure that teachers provided those accommodations or were trained to do so. Furthermore, she instructed teachers not to follow the 504 plan, essentially telling them to arbitrarily inflate his grades rather than comply with the 504 plan.

k.  In November/December 2013, Harmony convinced Plaintiffs to stop pursuing remedies (at that time, a due process hearing) by agreeing to change Frankie's 504 plan. Harmony ultimately did not accommodate Frankie after convincing Plaintiffs to drop their complaints.

l.  In May 2014, Plaintiffs were convinced to drop a due process hearing to obtain solutions in mediation. Harmony ultimately did not accommodate Frankie after convincing Plaintiffs to drop the due process hearing.

    m.  By fall 2014, Harmony was again assuring Plaintiffs of further accommodations for the 2014-2015 school year. By the end of the year, Harmony had still failed to deliver and the consequences had become painfully clear for Frankie, despite the extra tutoring Plaintiffs were obtaining to compensate for his difficulties. Frankie's first year of college is in large part devoted to remedial classes to compensate for Harmony's failure.

    n.  Harmony did not comply with 504 plans after recommendations had been accepted for compensatory services. For example, although it was determined that Frankie needed compensatory tutoring specifically tailored to his needs, Harmony only gave him the option of attending irrelevant after school classes made available to students without disabilities.

36.  In November 2015, Harmony and its agent denied Frankie due process. The due process hearing officer, Eric Ransleben —a private attorney hired by Harmony— confusingly dismissed Frankie's complaints after the pre-hearing conference, stating that a complaint was governed by Section 504, was not about a 504 claim, that there were no facts that could support an inquiry into a 504 claim (despite a 2015 OCR findings on the same facts that Frankie's rights under 504 had been violated), and that there was no evidence to support tolling any of Frankie's claims because of the school's pattern of deception.

37.  In May 2016, Eric Ransleben dismissed Frankie's complaint at the due process hearing stating there was no evidence to support his claim. This was despite the fact that the hearing officer had an OCR report finding that Frankie had not been accommodated during his senior year.

38.     Harmony and Ransleben interfered with Frankie's right to due process by failing to give him information that was necessary for him to participate in his claim, including without limitation, information about earlier pre-hearing conferences at which he had not been present. Ransleben interfered with Frankie's right to due process by giving instructions to Harmony's participants about what they should say.

39.     The November hearing was conducted just after Frankie had an automobile accident which caused him to require significant recovery time from August 2015 through March 2016, inhibiting his ability to participate in his own hearing or pursue other remedies.

40.     Harmony provided Plaintiffs with materials instructing them that they could contest the outcome of the 504 proceeding in a "district court." After some missteps in the interpretation of what constitutes a "district court," Plaintiffs have therefore brought claims in federal district court, their administrative remedies having been both exhausted and their access to such remedies having already proven to be little more than a sham.

41.     This occurs amidst emerging investigative journalism that indicates that Texas SEA, TEA, and schools are systematically discriminating against students with learning disabilities like ADD/ADHD and denying them reasonable accommodations. In the case at hand, this has led to discrimination and retaliation against Frankie and Angela, the denial of accommodations and the benefits of education, a failure to meet his needs as adequately as the needs of other students were met, and substantial costs incurred by Angela, Frankie's mother.

## IV.     <u>CAUSES OF ACTION</u>

42.     The facts alleged are incorporated into every cause of action.

## FIRST COUNT: AMERICANS WITH DISABILITIES ACT TITLES II AND III, 42 U.S.C. 12101 et seq.

43.     Frankie is a qualified individual with a disability who was discriminated against by being excluded from or denied the benefits of a public education and was discriminated against because of his disability. Without limiting the generality of the foregoing, Harmony did not provide reasonable accommodations for Frankie's disability. Furthermore, Harmony acted with discriminatory intent, even asking Frankie to leave the school.

44.     Frankie engaged in protected activity, Harmony took adverse action against him, the Harmony was aware of the protected activity at the time it took place, and there is a causal connection between the Harmony's adverse action and the protected activity.

45.     Harmony's actions proximately caused Plaintiffs' damages.

## SECOND COUNT: REHABILITATION ACT OF 1973, 29 U.S.C. 701 et seq.

46.     Frankie is disabled under Section 504, is otherwise qualified to participate in school activities, Harmony receives federal funds, and Frankie was excluded from participation in, denied the benefits of, or subject to discrimination at Harmony's school. Without limitation, Frankie was denied reasonable accommodations for him to receive the full benefits of education, and was discriminated against by his teachers, who denied accommodations and discriminated against him because of his ADD/ADHD.

47.     Frankie engaged in protected activity, the Harmony took adverse action against him, the Harmony was aware of the protected activity at the time it took place, and there is a causal connection between the Harmony's adverse action and the protected activity.

48.     Defendants' actions proximately caused Plaintiffs' damages.

## THIRD COUNT: 42 U.S.C. 1983

49.     Harmony subjected Frankie to conduct that occurred under the color of state law, which conduct deprived him of his rights, privileges, or immunities guaranteed under federal law or the U.S. Constitution.

50.     Without limitation, Harmony's pattern of denial of rights and due process to students with disabilities shows a policy of denying rights guaranteed under federal law and the Constitution. Harmony has an actual or de facto policy of denying rights under the ADA and Section 504 to individuals with ADD/ADHD.

51.     Without limitation, the intentional denial of and deliberate indifference to the denial of Frankie's rights under the ADA and Section 504, by school officials and agents of Harmony, constitute 1983 violations, as do the intentional discrimination and retaliation endured by Frankie. The statements of Harmony's high level district officials indicated that a widespread practice of denying accommodations to students like Frankie existed and that Harmony was aware and complicit in these conditions. Furthermore, Harmony retaliated against Frankie by trying to force him and his siblings out of Harmony schools.

52.     Without limitation, Harmony's intentional deception and interference designed to prevent Plaintiffs from obtaining due process constitutes intentional denial and deliberate indifference to Frankie's rights under the federal Constitution.

53.     Without limitation, Harmony and the individual defendants treated Frankie differently from other students with no rational basis for doing so. Frankie's accommodations were denied, the defendants intentionally refused to meet Frankie's needs as adequately as the needs of other students were met, and Frankie's instructors subjected him to discriminatory conduct in class, all because they irrationally targeted Frankie as less deserving of rights.

54.     Without limitation, the individual defendants subjected Frankie to conduct that occurred under the color of state law, which conduct deprived him of his rights, privileges, or immunities guaranteed under federal law or the U.S. Constitution. Without limitation, the individual defendants used their positions with Harmony to intentionally discriminate against and retaliate against Frankie and to deny him appropriate accommodations for his disability. Furthermore, the individuals were also acting under color of law because Harmony had at least a de facto policy of denying accommodations to students with ADD/ADHD or had a specific policy of doing so in Frankie's case.

55.     All Defendants' actions involved reckless or callous indifference to Frankie's federally protected rights under the ADA and Section 504 and to be free from discrimination, retaliation, and denial of due process.

56.     Defendants' actions proximately caused Defendants' damages.

**FOURTH COUNT: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

57.     The individual defendants acted intentionally or recklessly, which conduct was extreme and outrageous and caused Frankie to suffer severe emotional distress. Without limitation, the individual defendants' complete failure to accommodate Frankie, calling Frankie out in class for his disabilities, and other actions intentionally or recklessly created a hostile environment for Frankie required significant remedial counseling and caused severe emotional distress. Although the individual defendants could have chosen one or more accommodations outlined in Frankie's 504 plan, the individual defendants did not have the discretion to flatly refuse all of the accommodations determined by the 504 plan, or they refused those accommodations in bad faith despite Frankie's clear and established right to receive accommodations outlined in a 504 plan. Furthermore, the emotional abuse of students by

harassing them on the basis of their disabilities and disclosing personal health information about their disabilities in class is prohibited by Texas law and is obviously unacceptable behavior by instructors.

## V.        DAMAGES

58. The former paragraphs are incorporated by reference.

59.     Plaintiff is entitled for compensation for tutoring costs expended to compensate for violations of the 504 plan, current and future tutoring costs to remediate educational deficiencies that exist because of violations of the 504 plan, loss of college tuition to remedial classes, and mental health counseling costs, totaling to approximately $155,000, mental anguish and suffering in the amount of $150,000, and punitive damages in at least the amount of $300,000.

## VI.        ATTORNEY FEES

60.     Plaintiffs have incurred attorney fees and costs of approximately $28,000, which are mounting, and which are recoverable for 504, ADA, and 1983 claims.

## VII.        DEMAND FOR JURY TRIAL

61.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand trial by jury in this action of all issues so triable.

## VIII.        PRAYER

WHEREFORE, PREMESIS CONSIDERED, Plaintiffs respectfully ask that upon final hearing the court award damages at least in the amount of $605,000, plus costs and attorney fees, and such other and further relief to which Plaintiff may be entitled.

DATED: October 27, 2016

Respectfully submitted,


By: /s/ Brook Miscoski
Brook Miscoski
Texas Bar No. 24079014

Hurr Law Office, P.C.
4717 Fletcher Ave, Suite 101
Fort Worth, Texas 76107
Telephone: (817) 210-0150
Facsimile: (800) 487-9054
bmiscoski@hurrlawoffice.com

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that on October 27, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, such that the parties that have appeared shall receive notification through their attorneys of record below. Although the Court's ECF system has not been updated to reflect all parties, each party that has appeared is represented by the attorneys below.

Robert A. Schulman
Schulman Lopez Hoffer & Adelstein LLP
517 Soledad Street
San Antonio, TX 78205-1508
210-538-5385
210-538-5384 (fax)
rschulman@slh-law.com
LEAD ATTORNEY FOR DEFENDANTS

Christopher H. Schulz
Schulman Lopez Hoffer & Adelstein LLP
700 Lavaca, Suite 1400
Austin, TX 78201
512-962-7384
210-538-5384 (fax)
cschulz@slh-law.com
ATTORNEY TO BE NOTICED FOR DEFENDANTS

Lucie S. Tredennick
Schulman Lopez Hoffer & Adelstein LLP
701 North Post Oak, Suite 612
Houston, TX 77024
346-802-2133
210-538-5384 (fax)
lshipp@slh-law.com
ATTORNEY TO BE NOTICED FOR DEFENDANTS

By: /s/ Brook Miscoski
Brook Miscoski
Texas Bar No. 24079014

Hurr Law Office, P.C.
4717 Fletcher Ave, Suite 101
Fort Worth, Texas 76107
Telephone: (817) 210-0150
Facsimile: (800) 487-9054
bmiscoski@hurrlawoffice.com

COUNSEL FOR PLAINTIFFS